**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
**BREEDEN & ASSOCIATES, PLLC**
376 E. Warm Springs Road, Suite 120
Las Vegas, NV 89119
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DEREK MYERS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JASON POTTS, an individual,<br><br>Defendant. | CASE NO. 2:25-cv-1543-JAD-NJK<br><br>**PLAINTIFF'S OBJECTION TO BILL OF COSTS OR, ALTERNATIVELY, MOTION TO DENY COSTS OR STAY ENFORCEMENT WITHOUT BOND** |

Plaintiff Derek Myers respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 54(d) and 62, Local Rule 54-1, and the Court's inherent authority to manage its docket, for an order staying or deferring taxation of the costs sought in Defendant Jason Potts's Bill of Costs [ECF No. 32] until resolution of Plaintiff's appeal to the United States Court of Appeals for the Ninth Circuit. In the alternative, Plaintiff requests that the Court deny or substantially reduce the costs sought and/or stay enforcement of any costs award without bond pending appeal. This motion is timely filed within the fourteen-day objection period following service of the Bill of Costs and is based on the following memorandum of points and authorities, the papers and pleadings on file, and any argument the Court may entertain.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND BACKGROUND

On July 13, 2026, this Court granted summary judgment for Defendant on Plaintiff's First Amendment claim, declined supplemental jurisdiction over the state-law claim, and entered final

judgment. [ECF Nos. 30, 31.] Plaintiff has filed a timely appeal of that judgment to the Ninth Circuit, challenging both of the Court's independent holdings: the determination that Plaintiff did not establish state action under *Lindke v. Freed*, 601 U.S. 187 (2024), and the grant of qualified immunity on damages. On July 14, 2026—one day after judgment—Defendant filed a Bill of Costs seeking $2,685.50, comprising $890.75 for the stenographic transcript of Plaintiff's deposition, $800.00 for a videographer at that same deposition, and $994.75 for a copy of Defendant's deposition transcript. [ECF No. 32 at 4, 6–8.]

On July 28, 2026, Myers filed a timely Notice of Appeal [ECF No. 33] of the Court's decision to the Ninth Circuit Court of Appeals. Because the appeal places in question the very predicate of the Bill of Costs—Defendant's status as prevailing party—the most efficient course is to defer taxation until the Ninth Circuit rules. Should the Court reach the merits of the Bill of Costs now, the equitable factors the Ninth Circuit requires district courts to consider in civil-rights cases weigh against an award; specific items sought are not properly taxable under 28 U.S.C. § 1920 in any event; and any award should be stayed without bond while the appeal is pending.

## II. ARGUMENT

### A. The Court Should Defer or Stay Taxation of Costs Pending Appeal.

District courts possess broad discretion over the timing and taxation of costs under Rule 54(d)(1), *see Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003), and equally broad inherent authority to control the disposition of matters on their dockets "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) ("A district court has discretionary power to stay proceedings in its own court under *Landis*."). That inherent power specifically includes the discretion to defer ruling on a bill of costs where a companion appeal is pending, because deferral conserves judicial and party resources and avoids the prospect of taxing—

and then unwinding—costs that depend on a judgment under active appellate review. Rule 54(d)(1) itself contemplates such flexibility, providing that costs "should be allowed" but leaving the timing and amount to the district court's discretion, and Local Rule 54-1 permits the Court to "tax costs on notice" but the Court also has the ability to defer taxation as the equities require. Deferral of taxation of costs is particularly appropriate here for three reasons.

*First*, the forthcoming appeal challenges the prevailing-party determination itself. A costs award under Rule 54(d) presupposes a "prevailing party," and if the Ninth Circuit reverses the summary judgment, Defendant will no longer be one. *See Cadkin v. Loose*, 569 F.3d 1142, 1148 (9th Cir. 2009) (prevailing-party status turns on "a material alteration of the legal relationship of the parties"). Any costs taxed while the appeal is pending would have to be vacated and, if collected, repaid—an inefficient exercise that deferral avoids entirely.

*Second*, the amounts at issue—$2,685.50—are modest, but the burden of litigating objections twice is not. Resolving the objections now, when substantive elements of the underlying judgment may not survive, means the parties and the Court will likely have to revisit those same objections after remand. On a discrete cost award of this size, the marginal cost to Defendant of waiting for the mandate is negligible; the marginal cost to Plaintiff and to the Court of resolving objections that may become academic is not.

*Third*, Defendant will suffer no cognizable prejudice from a short deferral. The costs are fixed, documented, and fully recoverable with the same force after the mandate issues if the judgment is affirmed. Nothing about the passage of time impairs Defendant's ability to collect. *Cf. Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc) (emphasizing that Rule 54(d) "[b]y its terms, the rule creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs."). Where, as here, the case presents a discrete, modest cost award, and where the appeal squarely challenges

the very predicate of prevailing-party status on issues the Court itself identified as unresolved, the interests of judicial economy, comity with the appellate court, and orderly administration all counsel deferral.

**B.  In the Alternative, the Equitable Factors Governing Costs in Civil-Rights Cases Warrant Denial or Substantial Reduction.**

   **1.  Rule 54(d) creates a rebuttable presumption, not an entitlement.**

   Although Rule 54(d)(1) creates a presumption in favor of costs, that presumption is rebuttable. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013) (Rule 54(d)(1) "codifies a venerable presumption that prevailing parties are entitled to costs" but "grants federal courts discretion to refuse to tax costs in favor of the prevailing party"); *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (Rule 54(d) "vests in the district court discretion to refuse to award costs" when "specific reasons" justify that decision). The Ninth Circuit has identified "appropriate reasons" for denying costs that apply with special force in civil-rights litigation: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) the chilling effect of imposing high costs on future civil-rights litigants; (4) the closeness and difficulty of the issues; (5) whether the prevailing party's recovery was nominal or partial; (6) whether the losing party litigated in good faith; and (7) whether the case presented issues of national or public importance. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014); *Ass'n of Mexican-Am. Educators*, 231 F.3d at 592–93. Where those factors weigh against costs, the district court's discretion is well exercised in denying or reducing them. *Draper v. Rosario*, 836 F.3d 1072, 1087–88 (9th Cir. 2016) (reversing costs award against an indigent civil-rights plaintiff for failure to consider the factors); *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079–80 (9th Cir. 1999) (district court must consider the plaintiff's resources and the chilling effect of a costs award in a civil-rights case).

/ / /

4

**2.  The equitable factors decisively favor Plaintiff.**

**The issues were apparently close and difficult.**  Although the Plaintiff did not believe so, apparently this case presented questions the Court believed were first impression concerning the application of *Lindke v. Freed* to X's reply-restriction feature—questions this Court itself acknowledged were open. In granting qualified immunity, the Court reasoned that "[s]ome court may ultimately hold that limiting direct replies is functionally indistinguishable from blocking critics from an official social-media forum," and rested its ruling on the absence of controlling authority resolving that precise question. [ECF No. 30 at 13.] The state-action ruling likewise turned on a fact-intensive application of *Lindke* and *Garnier v. O'Connor-Ratcliff*, 136 F.4th 1181 (9th Cir. 2025) to a departmental official whose ordinary-course communications the Court itself acknowledged "fall squarely within the scope of matters that the Chief of the Department of Public Safety would ordinarily be authorized to address." A case whose dispositive questions the Court has expressly described as unresolved by controlling authority is the paradigm of a "close and difficult" case under *Escriba*. *Cf. Draper*, 836 F.3d at 1088–89 (closeness weighed against costs where dispositive issues were genuinely contested).

**The case was brought in good faith and presents issues of public importance.**  This was a public interest lawsuit to preserve the First Amendment rights of the public. Plaintiff is a working journalist who sued to vindicate the public's ability to engage with official government communications from the City's highest-ranking public-safety official—a matter of public concern for every resident who follows, questions, or reports on the Department. The suit sought primarily declaratory and injunctive relief defining the constitutional rules for official social-media accounts in this circuit after *Lindke*. Litigation of exactly this kind is how those rules develop, as *Lindke*, *Garnier*, and *Knight First Amendment Institute at Columbia University v. Trump*, 928 F.3d 226 (2d Cir. 2019) vacated as moot, 141 S. Ct. 1220 (2021), all attest. The Supreme Court has recognized

that private civil-rights plaintiffs serve "important social purposes," *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418 (1978), and the record confirms Plaintiff litigated professionally, met every deadline, and confined discovery to what was reasonably necessary to the constitutional theory presented.

**A costs award would chill future civil-rights litigants.**  Taxing costs against an individual journalist for pressing a good-faith, unresolved First Amendment question would send precisely the deterrent signal the Ninth Circuit has warned against: that citizens and members of the press "of modest means" risk financial penalty for testing the constitutionality of official conduct. *Stanley*, 178 F.3d at 1080. Because cost awards might have a chilling effect and discourage future civil rights litigants, a district court must weigh that consideration before imposing them. *Ass'n of Mexican-Am. Educators*, 231 F.3d at 592-593 ("we note that divesting district courts of discretion to limit or to refuse such overwhelming costs in important, close, but ultimately unsuccessful civil rights cases like this one might have the regrettable effect of discouraging potential plaintiffs from bringing such cases at all."). The same policy rationale animates the asymmetric fee-shifting Congress created in 42 U.S.C. § 1988, which permits successful defendants to recover fees only when a plaintiff's suit is "frivolous, unreasonable, or without foundation." *Christiansburg*, 434 U.S. at 421; *see also Fox v. Vice*, 563 U.S. 826, 833 (2011); *Miller v. L.A. Cnty. Bd. of Educ.*, 827 F.2d 617, 619 (9th Cir. 1987) (same standard for costs). While § 1988 governs attorneys' fees rather than costs, the identical policy considerations properly inform Rule 54(d)'s exercise of discretion here. *See Marx*, 568 U.S. at 384–85 (recognizing that statute-specific policy may inform the Rule 54(d) analysis).

**Plaintiff's resources are limited.**  Plaintiff is an individual journalist. His financial resources are limited, particularly relative to a defendant whose defense is publicly funded through the Las Vegas City Attorney's Office. The Ninth Circuit has recognized that "a losing party's financial resources" is a proper equitable consideration under Rule 54(d), and that a marked disparity

in resources supports denial or reduction of costs. *Escriba*, 743 F.3d at 1248; *Draper*, 836 F.3d at 1088; *Stanley*, 178 F.3d at 1079–80.

**3.  In any event, the videographer fee should be disallowed as duplicative.**

Independent of the equitable factors, the amount sought should be reduced because 28 U.S.C. § 1920(2) permits taxation only of transcripts "necessarily obtained for use in the case," and Defendant bears the burden of demonstrating necessity for each item claimed. *Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002); *Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.*, 260 F.3d 1054, 1061 (9th Cir. 2001). "[T]axable costs are limited by statute and are modest in scope." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012).

The Bill of Costs seeks $800 for the videographer at Plaintiff's deposition *in addition to* $890.75 for the stenographic transcript of the same deposition. [ECF No. 32 at 4, 6.] The Ninth Circuit permits taxation of both video and stenographic recording of a single deposition only where the party seeking costs demonstrates that both were reasonably necessary. *Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 741 F.3d 955, 958–59 (9th Cir. 2013) (reversing costs award for videotape editing and synchronization where necessity was not shown). Defendant has offered no such demonstration. The case was resolved on summary judgment. There was no trial in which video excerpts were played; Defendant's summary-judgment briefing relied solely on the stenographic transcript, *see* [ECF Nos. 17, 25 (citing only the written transcript at 17-2)]; and the record contains no video citation whatsoever. On this record, the videographer fee was not "necessarily obtained for use in the case" within the meaning of § 1920(2) and should be disallowed regardless of how the Court rules on the equitable factors. At minimum, the $800.00 videographer charge should be stricken.

/ / /

/ / /

**C.  Any Costs Award Should Be Stayed Without Bond Pending Appeal.**

If the Court taxes any costs, Plaintiff requests a stay of enforcement pending appeal under Federal Rule of Civil Procedure 62(b), with the bond requirement waived, or under the Court's inherent authority. *See* Fed. R. Civ. P. 62(b) (permitting a stay upon "providing a bond or other security"). District courts have "inherent discretionary authority in setting supersedeas bonds," *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987), including the discretion "to allow other forms of judgment guarantee" or, in "unusual circumstances," to order "unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery." *Int'l Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir. 1985); *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760–61 (D.C. Cir. 1980).

Courts considering a request to reduce or waive appeal security often consider the factors articulated in *Dillon v. City of Chicago*, 866 F.2d 902, 904–05 (7th Cir. 1988): (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the appellant's ability to pay is so plain that the cost of a bond would be a waste of money; and (5) whether the appellant's financial situation is so precarious that requiring a bond would place other creditors in an insecure position. *Accord Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986); *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979).

Those factors overwhelmingly favor waiver here. The amount in controversy is small ($2,685.50 as sought, less if reduced). Plaintiff is a working journalist whose ability to satisfy so modest a cost award after appeal is not seriously in question, and Defendant has proffered no evidence to the contrary. Collection—should the judgment be affirmed—would be uncomplicated: Defendant is a public official represented by a governmental office fully capable of collecting a

fixed sum through routine post-judgment procedures. Requiring a bond in this posture "would waste money," *Dillon*, 866 F.2d at 905, and would impose a hardship disproportionate to any protection it could afford.

The traditional four-factor stay analysis leads to the same result. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (per curiam) (adopting the *Nken* framework in this Circuit). Plaintiff has a substantial appellate case on the state-action question. Absent a stay, Plaintiff will incur the burden of collection activity that would have to be unwound on reversal. Defendant faces no offsetting harm from delay, because the amount is small, fixed, and fully secured by the availability of routine post-judgment enforcement if the appeal fails. And the public interest favors preserving the status quo until the underlying constitutional question is finally resolved. Even under the sliding-scale approach, *see Leiva-Perez*, 640 F.3d at 966, the balance of hardships tips sharply in Plaintiff's favor and warrants a stay.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) stay or defer taxation of Defendant's Bill of Costs until issuance of the Ninth Circuit's mandate in Plaintiff's appeal; (2) in the alternative, deny costs outright under the equitable factors identified in *Escriba*, *Draper*, and *Stanley*, or substantially reduce them, including by disallowing the $800.00 videographer fee as duplicative and not "necessarily obtained for use in the case" under 28 U.S.C.

/ / /

/ / /

/ / /

/ / /

/ / /

§ 1920(2); and (3) stay enforcement of any costs award without bond pending appeal.

Dated this 28th day of July, 2026.

**BREEDEN & ASSOCIATES, PLLC**

*/s/ Adam J. Breeden*

**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
376 E. Warm Springs Rd., Suite 120
Las Vegas, NV 89119
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of July, 2026, I served a copy of the foregoing legal document **PLAINTIFF'S OBJECTION TO BILL OF COSTS OR, ALTERNATIVELY, MOTION TO DENY COSTS OR STAY ENFORCEMENT WITHOUT BOND** via the method indicated below:

| | |
|---|---|
| X | Through the Court's ECF/CM system on all registered users |
| | Pursuant to FRCP 5, by placing a copy in the US mail, postage pre-paid to the following counsel of record or parties in proper person:<br><br>NECHOLE GARCIA, ESQ.<br>PAUL MATA, ESQ<br>495 S. Main Street, Sixth Floor<br>Las Vegas, NV 89101<br>*Attorneys for Defendants* |
| | Via receipt of copy (proof of service to follow) |

An Attorney or Employee of the following firm:

/s/ *Kirsten Brown*

**BREEDEN & ASSOCIATES, PLLC**