JEFFRY M. DOROCAK
City Attorney
Nevada Bar No. 13109
By: NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
By: MICHELLE DI SILVESTRO ALANIS
Deputy City Attorney
Nevada Bar No. 10024
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
(702) 229-6629
(702) 386-1749 (fax)
Email: ngarcia@lasvegasnevada.gov
Attorneys for JASON POTTS

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DEREK MYERS, an individual,

Plaintiff,

vs.

JASON POTTS, an individual,

Defendant.

CASE NO. 2:25-cv-1543-RFB-NJK

**DEFENDANT JASON POTTS' RESPONSE TO PLAINTIFF'S OBJECTION TO BILL OF COSTS, OR ALTERNATIVELY, MOTION TO DENY COSTS OR STAY ENFORCEMENT WITHOUT BOND**

Defendant JASON POTTS (hereinafter "Chief Potts"), through his attorneys of record, JEFFRY M. DOROCAK, City Attorney, by NECHOLE GARCIA, Chief Deputy City Attorney, and MICHELLE DI SILVESTRO ALANIS, Deputy City Attorney, hereby responds to Plaintiff Derek Myers' ("Myers") Objection to Bill of Costs, or Alternatively Motion to Deny Costs or Stay Enforcement Without Bond. The costs should be granted because they are reasonable and equity favors awarding costs. Moreover, Plaintiff failed to provide any proof of inability to pay costs or the bond in his appeal.

This response is based upon the pleadings and papers on file herein, the following points and authorities, and any oral argument that the Court may entertain.

. . . .

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.      **INTRODUCTION**

On July 13, 2026, this Court granted summary judgment for Defendant Chief Potts and entered judgment in his favor. ECF Nos. 30, 31. Thus, Chief Potts is the prevailing party in this suit. As the prevailing party, Chief Potts is entitled to seek his costs. FED. R. CIV. P. 54(d)(1). Accordingly Chief Potts filed a Bill of Costs, seeking $2,685.50 in costs, which as Myers concedes, is a "modest" amount. Yet, Myers objects to the costs, seeking a stay or an outright denial. However, Myers fails to overcome the "venerable" presumption in favor of these costs. Instead, he makes a half-hearted argument that he has less resources than the City (who is not even a party to this suit) and that the video deposition is unreasonably duplicative, but those arguments fail. Indeed, Myers presents no real proof of indigency or some other inability to pay, or that the costs are unreasonable. Moreover, the video deposition was necessary to visually demonstrate that Myers could still see and retweet Chief Potts posts. Thus, this Court should award the $2,685.50 in costs.

Myers also argues that there are equitable reasons costs should be denied, presenting himself as a good faith journalist pursuing the rights of others. However, Myers' claims are undercut by his own public statements regarding his rationale for entering this suit. Myers has publicly stated that he filed this suit against Chief Potts (his second against Potts in only a few months)[1] out of revenge for what he perceives to be previous civil rights violations. Ex. A. Thus, Myers is hardly the high-minded journalist who brought this suit for noble reasons as he contends. Rather, he is a vindictive opposing party who saw an opportunity to increase the costs and pressure that come with litigation against Chief Potts and the City of Las Vegas. His behavior – engaging in vindictive litigation - is actually the sort of conduct that an award of costs and fees seeks to discourage. Moreover, Myers fails to establish that any of the other equitable factors, such as indigency or a significant income disparity exists. Thus, equity actually weighs in favor of costs being awarded.

---

[1] Myers filed his first case against Chief Potts on March 27, 2025. Defendants filed a motion to dismiss that is currently pending. Case 2:25-cv-00562.

## II.   ARGUMENT

**A. Myers failed to overcome the "venerable" presumption in favor of awarding costs.**

Rule 54(d)(1) provides that "costs – other than attorney's fees – **should** be awarded to the prevailing party." FED. R. CIV. P. 54(d)(1) (emphasis added). The costs that may be taxed are set forth in 28 U.S.C. § 1920. The list of costs allowed is not exhaustive; rather they are "a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) There is a strong and "venerable" presumption that prevailing parties are entitled to costs. *Marx v. General Revenue Corp.*, 568 U.S. 371, 377-78 (2013). While the district court has discretion to deny costs, that discretion is not without limits. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014). Indeed, a "court must 'specify reasons' for its refusal to award costs." *Id* (internal citation omitted). Some appropriate reasons for denying costs include: 1) the substantial public importance of the case, 2) the closeness and difficulty of the issues in this case, 3) the chilling effect on future similar actions, 4) the plaintiff's limited financial resources, and 5) the economic disparity between the parties. *Id*. at 1248.

In *Escriba*, the plaintiffs brought evidence to support its claims that fairness required a denial of costs, such as letters from labor agencies and proof of economic hardship. *Id*. at 1248. In contrast, Myers presents nothing other than self-serving rhetoric to support his claim that equitable fairness requires a denial of costs. Indeed, Myers provides no proof of the substantial public importance of this case or that he brought the case in good faith. To the contrary, Myers' own public comments about this case indicate that he did not initiate litigation out of some high-minded ideal to encourage access to public officials. Ex. A. Rather, he made clear he filed the case for personal reasons: because "Derek Myers does not lose." *Id*. Moreover, he claimed in relation to filing this suit that the "bloodbath" against the City of Las Vegas is "only beginning." *Id*. It is clear from these comments that Myers was not motivated by the public interest. Rather, Myers was motivated by his own vindictive desire to punish Chief Potts and the City of Las Vegas by increasing the costs and pressure of litigation against them.

. . . .

Myers' claim that the issues were close also falls short. Nowhere in the Court's Order did it state that this was a close call or difficult to decide. Rather, the Court made clear that Myers failed to meet his burden to prove an essential element of his case. Indeed, the Court noted that "Myers has not carried his burden to show that Potts had actual authority to speak for the City, so Myers federal claim fails regardless of remedy." ECF No. 30 at 1:17-18.  Myers produced nothing to establish that Chief Potts had actual authority to make public announcements on behalf of the City. That is the first element that must be established in order to make a First Amendment claim under 42 U.S.C. § 1983. *Lindke v. Freed*, 601 U.S. 187, 198 (2024). Myers' failure to establish an essential element of his case undercuts his claim that this case was a close call.

In addition to failing to establish liability, Myers failed to overcome the presumption of qualified immunity for Chief Potts.  Myers could point to no case law establishing that Chief Potts' actions were a clear violation of the law. Indeed, the Court found that "qualified immunity would independently bar Myers' request for damages because existing law did not clearly establish that Potts' use of X's reply-limitation feature violated the First Amendment." ECF No. 30 at 1:18-20. Thus, even if Myers had met his burden to establish the elements of this case, he still would not have prevailed because qualified immunity bars Myers from receiving damages. This case is no close call, and costs should be awarded.

Myers also failed to provide any evidence that awarding approximately $2800 in costs will have a chilling effect on future litigation. Again, in *Escriba*, the plaintiff presented declarations from the directors of the state and federal labor organizations testifying that taxing costs would make it difficult for low wage earners to file suit. *Escriba*, 743 F.3d at 1248. Myers makes no such showing here. He provides no declarations or other evidence that other plaintiffs in his situation would be chilled from bringing such a suit due to the risk of paying the small amount of costs here. Indeed, he also presents no proof that he or other individuals who would bring these sorts of suits are low-income earners that would be chilled from suit. Nor has Myers provided proof that there is a large economic disparity between himself  and Chief Potts that would make it inequitable for Myers to pay costs.

. . . .

Myers fails to establish that costs should be denied for equitable reasons. To the contrary, it would be inequitable for Myers to evade paying the modest costs for litigation he initiated for personal reasons, especially when he has not demonstrated indigency or an inability to pay.

**B. The costs and/or bond should not be stayed pending appeal.**

Myers argues that the costs should be stayed pending appeal because, if his appeal is successful, he would become the prevailing party. This rationale is not enough to overcome the strong presumption for awarding costs for two reasons. One, Myers strongly overestimates his chances of success on appeal. This is not a "close case" as he contends. As discussed above, Myers failed to establish one of the essential elements of his case, whether Chief Potts even had actual authority to speak on the City's behalf. Further, even if Myers had established liability, he failed to overcome qualified immunity because there is no law clearly establishing that Chief Potts' actions were a violation of the law. Thus, Myers has not one, but two large hurdles to overcome to prevail on appeal. While the Ninth Circuit reversing the judgment is not impossible, the likelihood is not as high as Myers portrays.

Second, the costs nor the bond should be waived in this matter because Myers failed to meet the criteria established by the courts. Before deciding to waive the bond, courts balance: 1) the degree of probability of success on the merits, 2) the reasonable extent of the security to be posted, from the defendant's perspective, 3) the reasonable extent of the security to be posted from the plaintiff's perspective. *Simulnet East Associates v. Ramada Hotel Operating Co.*, 37 F.3d 573, 575-6 (9th Cir. 1994) (citing *Aggarwal v. Ponce School of Medicine*, 745 F.2d 723, 727-28 (1st Cir. 1984)). Here, Myers cannot demonstrate that he is likely to succeed on the merits. As discussed above, Myers' likelihood of success is low because he failed to meet his evidentiary burden to establish liability. Moreover, there is no clear law establishing that Chief Potts' conduct is a violation. Thus, the likelihood is that the Ninth Circuit upholds this Court's judgment.

Myers also claims that Chief Potts will suffer no prejudice if no bond is paid. However, he provides no support other than the assumption that the City, which paid for Chief Potts' legal representation, has endless resources that do not have to be reimbursed by litigants. That is simply not true. The City's is funded solely by taxpayers and its funds are finite. Its financial difficulties

are also well-documented by the media. Those taxpayer funds should be reimbursed, particularly when Myers engaged in this litigation due to a vendetta to win his imagined "war" against the City and Chief Potts. Ex. A.

When it comes to the third factor, "a plaintiff's ability to post surety for costs" must be considered. *Simulnet*, 37 F.3d at 576 (9th Cir. 1994) (citing *Aggarwal*, 745 F.2d at 727). Indeed, "before requiring a bond to cover costs under Rule 54(d), a court must consider a party's ability to pay." *Gay v. Chandra*, 682 F.3d 590, 593 (7th Cir. 2012); *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999); *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979). Here, Myers provides absolutely no proof that he is indigent, of low income, or otherwise unable to pay the costs. Instead, he acknowledges the costs are "modest" and acknowledges that his "ability to satisfy so modest a cost award after appeal is not seriously in question." ECF No. 34 at 8:24-25. Myers then inappropriately attempts to shift the burden by claiming Chief Potts has failed to produce any evidence of Myers' inability to pay. But that is not Chief Potts' burden; it is Myers' burden to demonstrate that he cannot afford to pay the bond. *Poplar Grove Planting*, 600 F.3d at 1191 (the burden is on the moving party to objectively demonstrate the reasons to stay the bond, not on the judgment creditor).

Myers' chances of winning on appeal are not as certain as he portrays. Failure to post a bond prejudices Chief Potts and the City. Finally, Myers has failed to demonstrate indigency or an otherwise inability to pay the costs or a bond. Thus, neither the costs nor a bond should be stayed pending appeal.

**C. A video deposition was reasonably necessary.**

Myers argues this Court should deny the video deposition costs because they are unnecessarily duplicative. That is incorrect. The video was reasonably necessary because it captured video of Myers' ability to access Chief Potts' account that could not be captured by transcript alone. During the deposition, Myers initially claimed he was unsure whether he could see Chief Potts' X account and retweet posts. Ex. B at 48:5-8. Thus, the undersigned asked Myers to demonstrate on his phone that he could in fact access and retweet Chief Potts' account. *Id.* at 49:22-23. The undersigned specifically asked Myers to angle his phone so that the video camera

could record his access to Chief Potts' account. *Id.* at 50:4-8 ("Q: Can you maybe, once you've done that, hold it up so the camera can pick it up?  A: Certainly."). The videographer was able to visually record Myers accessing the account.  Obtaining a visual record of Myers being able to access and retweet Chief Potts was critical because it demonstrated that Myers could still see Chief Potts' posts, unlike when a person is blocked. This visual proof would have been particularly important had Myers continued to downplay his access to Chief Potts' account at trial. Thus, the video deposition cost was reasonably necessary and should be allowed.

## III.    CONCLUSION

Myers fails to overcome the strong, "venerable" presumption in favor of awarding costs. He brought this case out of a personal vendetta against Chief Potts, not out of concern for the plight of journalists everywhere. Moreover, Myers failed to establish an essential element of his case, as well as to demonstrate Chief Potts was not entitled to qualified immunity. Thus, this is not the "close case" Myers claims. Equity favors awarding costs, not denying them.  Moreover, neither the costs nor bond should be stayed because Myers overestimates his likelihood of succeeding on appeal and failed to demonstrate an economic hardship. Finally, the video deposition was necessary to visually demonstrate that Myers could access and retweet Chief Potts' X account. For these reasons, Chief Potts respectfully requests that this Court deny Myers' Objection and award costs.

DATED this 4th day of August, 2026.

JEFFRY M. DOROCAK
City Attorney

By:    /s/ *Nechole Garcia*
NECHOLE GARCIA
Chief Deputy City Attorney
Nevada Bar No. 12746
MICHELLE DI SILVESTRO ALANIS
Deputy City Attorney
Nevada Bar No. 10024
495 South Main Street, Sixth Floor
Las Vegas, NV 89101
Attorneys for JASON POTTS