# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Derek Myers,

Plaintiff

v.

Jason Potts,

Defendant

Case No.: 2:25-cv-01543-JAD-NJK

**Order Granting Motion to Deny Costs**

[ECF Nos. 32, 34, 35]

Plaintiff Derek Myers brought this First Amendment suit against Las Vegas Department of Public Safety Chief Jason Potts after Potts changed the settings on his X account so that only accounts he follows could directly reply to his posts.[1] After finding that Myers had not carried his burden to show that Potts had actual authority to speak for the City and that qualified immunity would independently bar Myers's request for damages, I granted Potts's motion for summary judgment and closed this case.[2] Potts then submitted his bill of costs, seeking $2,685.50, and Myers timely objected. Myers also filed a motion to deny costs or stay enforcement without bond, arguing that it would be efficient to defer taxation until his appeal at the Ninth Circuit is resolved, that the equitable factors district courts must consider in civil-rights cases weigh against an award, and that the video recording of Myers's deposition is not taxable under 28 U.S.C. § 1920.[3] Because the equitable factors weigh against an award, I grant the motion to deny costs.

---

[1] ECF No. 30 at 1.

[2] *Id.* at 14.

[3] There are duplicative filings on the docket because LR IC 2-2(b) requires that motions seeking distinct forms of relief be filed separately. I refer to Myers's objection to the bill of costs and motion to deny costs or stay enforcement without bond (ECF Nos. 34 & 35) as ECF No. 35, and Potts's response (ECF Nos. 38 & 39) as ECF 39.

## Discussion

### A. Standard for retaxing costs

Federal Rule of Civil Procedure 54(d)(1) awards taxable costs—other than attorneys' fees—to the prevailing party of a lawsuit "unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise."[4] The timing is left to the court's discretion, because courts have inherent power to "control the disposition of the cases on its docket with the economy of time and effort for itself, for counsel, and for litigants."[5] So courts may defer rulings on attorneys' fees and costs until after appeals have been resolved.

FRCP 54(d)(1) establishes "a presumption in favor of awarding costs to a prevailing party but vests in the district court discretion to refuse."[6] A court need not explain its decision to abide by this presumption,[7] but if it refuses to award costs, it must "specify [its] reasons."[8] "Appropriate reasons for denying costs include (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties."[9] "This is not an exhaustive list of good reasons for declining to award costs but rather a starting point for analysis."[10]

---

[4] Fed. R. Civ. P. 54(d)(1).

[5] *Landis v. N. A. Co.*, 299 U.S. 248, 254 (1936).

[6] *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (cleaned up).

[7] *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003).

[8] *Ass'n of Mexican-Am. Educators*, 231 F.3d at 591–93 (quoting *Subscription Television, Inc. v. Southern Cal. Theatre Owners Ass'n*, 576 F.2d 230, 234 (9th Cir. 1978)).

[9] *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014) (cleaned up).

[10] *Id.* (quotations omitted) (cleaned up).

**B. Several factors weigh in favor of declining to award costs in this case.**

I find that several Ninth Circuit factors weigh in favor of declining to award costs to the defendant in this case. Myers sought to vindicate his First Amendment right to free speech in this case and brought an action dealing with public figures and social media, which is timely and an area of law that is still developing.[11] The public importance of ensuring that plaintiffs can seek recourse for violation of that right is significant. Potts contends that Myers did not bring his suit in good faith or "out of some high-minded ideal to encourage access to public officials," and that he filed this suit for personal reasons and "his own vindictive desire to punish Chief Potts and the City of Las Vegas by increasing the costs and pressure of litigation against them."[12] Potts cites a post from Myers on X saying that "Derek Myers does not lose" and that "[t]he city knows their initial case is weak and the bloodbath is only beginning."[13] This post does not demonstrate a bad-faith motivation for this litigation or negate the notion that Myers's claims seek to vindicate his First Amendment rights; he can be angry at Potts and want to challenge what he views as viewpoint discrimination at the same time.

And though I granted summary judgment in the defendant's favor, this was a close case in some respects. The issue of public figures and social media is a live issue that courts, including the Supreme Court and the Ninth Circuit, have recently grappled with.[14] I conducted a fact-specific analysis of *Lindke v. Freed* and *Garnier v. O'Connor-Ratcliff* that turned on

---

[11] *Lindke v. Freed*, 601 U.S. 187 (2024) ("A close look is definitely necessary in the context of a public official using social media. . . . Many use social media for personal communication, official communication or both—and the line between the two is often blurred. Moreover, social media involves a variety of different and rapidly changing platforms, each with distinct features for speaking, viewing, and removing speech.").

[12] ECF No. 3 at 3.

[13] ECF No. 39-1.

[14] *See e.g. Lindke*, 601 U.S at 187; *Garnier v. O'Connor-Ratcliff*, 136 F.4th 1181 (9th Cir. 2025).

differences in language in California and Nevada statutes to determine that Myers had not demonstrated that Potts's posts were attributable to the City.[15] Regarding the qualified-immunity analysis, I noted that at some point a court may very well determine that using X's reply limiting features is a violation of the First Amendment, at which point Potts's conduct would not be independently barred by qualified immunity.[16] And I find that permitting these costs would have a chilling effect on civil-rights litigants seeking to vindicate their rights in potentially meritorious suits.[17]

The cost disparity between the parties also weighs slightly in favor of Myers. He argues that he is an "individual journalist" and that "his resources are limited, particularly relative to a defendant whose defense is publicly funded through the Las Vegas City Attorney's Office."[18] Potts replies that Myers has not provided proof "that there is a large economic disparity between himself and Chief Potts that would make it inequitable for Myers to pay costs" and that the City of Las Vegas has finite resources and financial difficulties well-documented by the media.[19] Myers fails to demonstrate that he cannot pay the $2,685.50, but there is an obvious economic disparity between a city that is paying for one party's defense and an individual plaintiff.

In *Escriba v. Foster Poultry Farms, Inc.*, the Ninth Circuit considered whether to award costs to the defendants after they defeated a case in which an employee sued for violations of the

---

[15] ECF No. 30 at 4–9.

[16] *Id.* at 13.

[17] *See Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1080 (9th Cir. 1999) (noting that "the imposition of such high costs on losing civil rights plaintiffs of modest means may chill civil rights litigation in this area. . . . Without civil rights litigants who are willing to test the boundaries of our laws, we would not have made much of the progress that has occurred in this nation since *Brown v. Board of Education*.").

[18] ECF No. 35 at 6 (cleaned up).

[19] ECF No. 39 at 4–6.

Family Medical Leave Act.[20] The court noted that "great economic disparity" between the parties was an appropriate reason to deny costs and declined to award costs because the plaintiff was a low-wage worker and the defendant was a multistate operation with billions of dollars in revenue.[21] Myers's case is not nearly as strong as Escriba's because he has not demonstrated that he does not have financial means to cover Potts's costs. And in *Escriba*, the district court relied on declarations from the director of the California Department of Fair Employment and Housing and a letter from the United States Department of Labor that both recommended that taxing costs "would chill future actions because low-wage earners would be reluctant to file suit."[22] But the underlying principles in *Escriba* are still relevant here because taxing costs, even modest ones, could convey a message that seeking to vindicate First Amendment rights when it comes to public figures and social media could saddle a plaintiff with thousands of dollars in the other side's costs. So I find that the equitable factors weigh against granting an award of costs, and I grant Myers's motion to deny them.

**Conclusion**

IT IS THEREFORE ORDERED that plaintiff Derek Myers's motion to deny costs **[ECF No. 35] is GRANTED** and his objection to Jason Potts's bill of costs **[ECF No. 34] is SUSTAINED**. The court declines to award costs in this action.

U.S. District Judge Jennifer A. Dorsey
November 24, 2026

---

[20] *Escriba*, 743 F.3d at 1247.

[21] *Id.* at 1249.

[22] *Id.* at 1248.